AO 102 (01/09) Application for a Tracking Warrant

# UNITED STATES DISTRICT COURT
## for the
### District of New Mexico

In the Matter of the Tracking of )
*(Identify the person to be tracked or describe* )
*the object or property to be used for tracking)* )
A BLACK 2019 BMW X3 BEARING NEW MEXICO ) Case No. MR 24-1510
LICENSE PLATE, HSHFRM, VIN # )
5UXCR6C5XKLL22707 )

**FILED**
United States District Court
Albuquerque, New Mexico

Mitchell R. Elfers
Clerk of Court

## APPLICATION FOR A TRACKING WARRANT

I, a federal law enforcement officer or attorney for the government, have reason to believe that the person, property, or object described above has been and likely will continue to be involved in one or more violations of __21__ U.S.C. § __841 and 846__. Therefore, in furtherance of a criminal investigation, I request authority to install and use a tracking device or use the tracking capabilities of the property or object described above to determine location. The application is based on the facts set forth on the attached sheet.

☒ The person, property, or object is located in this district.
☐ The person, property, or object is not now located in this district, but will be at the time of execution.
☐ The activity in this district relates to domestic or international terrorism.
☐ Other:

The tracking will likely reveal these bases for the warrant under Fed. R. Crim. P. 41(c): *(check one or more)*
☒ evidence of a crime;
☐ property designed for use, intended for use, or used in committing a crime;
☐ contraband, fruits of crime, or other items illegally possessed;
☐ a person to be arrested or a person who is unlawfully restrained.

☒ I further request, for purposes of installing, maintaining or removing the tracking device, authority to enter the following vehicle or private property, or both:
A BLACK 2019 BMW X3 BEARING NEW MEXICO LICENSE PLATE, HSHFRM, VIN # 5UXCR6C5XKLL22707

☒ Delayed notice of __120__ days (give exact ending date if more than 30 days: __01/26/2025__ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*
SA David Zimmerman
*Applicant's printed name and title*

Telephonically sworn and electronically signed.

Date: 8/14/2024

City and state: Albuquerque, New Mexico

*Judge's signature*
Steven C. Yarbrough, United States Magistrate Judge
*Printed name and title*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| IN THE MATTER OF THE TRACKING OF A BLACK 2019 BMW X3 BEARING NEW MEXICO LICENSE PLATE, HSHFRM, VIN # 5UXCR6C5XKLL22707 | Case No. _____ <br><br> **Filed Under Seal** |

## AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A SEARCH WARRANT

I, David Zimmerman, a Special Agent (SA) with the Drug Enforcement Administration (DEA), United States Department of Justice, being duly sworn, do depose and hereby state the following:

## INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of an application for a search warrant under Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 3117 authorizing the installation and monitoring of a tracking device in or on a Black 2019 BMW X3 bearing New Mexico registration plate HSHFRM, vehicle identification number 5UXCR6C5XKLL22707, hereinafter referred to as the CHAVEY VEHICLE. Based on the facts set forth in this affidavit, I believe that the CHAVEY VEHICLE is presently being used in furtherance of violations of 21 U.S.C. § 841, that being distribution of narcotics and 21 U.S.C. § 846, that being conspiracy to distribute narcotics.

2. There is probable cause to believe that the installation of a tracking device in or on the CHAVEY VEHICLE and use of the tracking device will lead to evidence, fruits, and instrumentalities of the aforementioned crimes as well as to the identification of individuals who are engaged in the commission of those and related crimes.

3. I am an investigative law enforcement officer of the United States within the meaning of 18 U.S.C. § 2510(7) as a Special Agent of the Drug Enforcement Administration

(DEA). As such, I am empowered to conduct investigations of and to make arrests for offenses enumerated in Title 21, United States Code.

4. I have been a Special Agent with the Drug Enforcement Administration since May of 2020. I have attended the DEA Training Academy in Quantico, Virginia, where I received approximately fourteen weeks of specialized narcotics related training. As part of the curriculum at the DEA academy, I received advanced training in controlled substance identification, narcotics related investigation techniques, interview and interrogation training, preparation of search warrants, tactical applications of narcotics enforcement, surveillance and electronic monitoring techniques. I have received training in the methods of operation of Drug Trafficking Organizations, and in the investigation of Title 21 violations. Prior to becoming a Special Agent with the DEA, I was a sworn Law Enforcement Officer with the Boulder Police Department and the Aurora Police Department in the state of Colorado. I began my career as a Colorado Law Enforcement Officer in December of 2013. I was tasked in conducting investigations of Colorado Revised Statute violations, and have authored arrest warrants and search warrants for residences, cell phones, and social media platforms, resulting from drug investigations. As a result, I am familiar with matters including, but not limited to, the means and methods used by individuals to purchase, transport, store, and distribute drugs and to hide profits generated from those transactions.

5. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

## SUMMARY OF PROBABLE CAUSE

6.  Between September of 2021 and August of 2024, agents have been investigating the illegal drug trafficking and money laundering activities of brothers Joaquin Rubalcaba (hereinafter "J. RUBALCABA") and Tomas Rubalcaba (hereinafter "T. RUBALCABA"), based in Albuquerque, New Mexico.

7.  Throughout the investigation, agents have learned of additional co-conspirators involved in the RUBALCABA's drug trafficking organization, to include Frederick CHAVEY (hereinafter "CHAVEY"). CHAVEY has been observed on numerous controlled purchases with a DEA undercover (UC) agent and on surveillance. Agents believe CHAVEY delivers drugs on behalf of J. RUBALCABA.

## UC CONTROLLED PURCHASE INVOLVING J. RUBALCABA VEHICLE AND CHAVEY VEHICLE IN MAY 2024

8.  On May 10, 2024, the Honorable David Herrera Urias, United States District Judge for the District of New Mexico, issued an order authorizing the interception of wire and electronic communications to and from (505) 518-6695 ("J. RUBALCABA PHONE 4"). Interceptions began on May 13, 2024, and ended on June 11, 2024.

9.  On May 30, 2024, agents utilized a UC to complete a controlled purchase of suspected fentanyl pills that was coordinated through J. RUBALCABA. The UC and J. RUBALCABA agreed to meet at the Lowe's located at 2001 12th St NW, Albuquerque, NM. Agents observed J. RUBALCABA arrive at Lowe's and get into the UC's vehicle. While in the vehicle, the UC asked for approximately 5,000 fentanyl pills. The UC asked if J. RUBALCABA would be able to provide it immediately. J. RUBALCABA advised he had something he needed to do but could send his "homie."

10. A short time later agents intercepted an outgoing telephone call from J. RUBALCABA to CHAVEY. Agents are familiar with CHAVEY's voice and recognized it on the phone call. During the phone call, J. RUBALCABA asked CHAVEY if CHAVEY could do J. RUBALCABA a favor by taking a "five pack," which agents know to be street slang for 5,000 pills, to the UC. CHAVEY agreed and informed J. RUBALCABA that CHAVEY would be there in twenty minutes.

11. Surveillance was established on CHAVEY at his residence located at 5732 Hanover Road NW, Albuquerque, NM.

12. A short time later, agents observed CHAVEY open his garage and leave his residence in a black 2019 BMW X3 bearing New Mexico license plate HSHFRM (CHAVEY VEHICLE). Agents determined that the CHAVEY VEHICLE is registered to Frederick CHAVEY at 5732 Hanover Road NW, Albuquerque, NM, and has VIN number 5UXCR6C5XKLL22707. Agents observed CHAVEY drive directly to Lowe's. CHAVEY completed the 5,000 fentanyl pill deal with the UC. Agents observed CHAVEY get back into CHAVEY VEHICLE and return home.

13. The suspected fentanyl pills that CHAVEY provided to the UC on behalf of J. RUBALCABA weighed a total gross weight of 798.7 grams and tested presumptive positive as fentanyl.

**UC CONTROLLED PURCHASE INVOLVING CHAVEY VEHICLE IN JUNE 2024**

14. On June 7, 2024, agents conducted a UC controlled purchase of 10,000 fentanyl pills from J. RUBALCABA for $6,000. The previous day, June 6, 2024, a UC contacted J. RUBALCABA and informed him that he was ready to "eat" again. The UC added that he wanted a double order of what he ate last time (referring to the purchase conducted on May 30, 2024 for

5,000 pills). J. RUBALCABA acknowledged and referred to the narcotics as "the chicken."[1] The UC stated he would call J. RUBALCABA the following day to arrange the deal. J. RUBALCABA acknowledged and agreed.

15. The following day, June 7, 2024, at approximately 10:49 a.m., the UC called J. RUBALCABA. The UC told J. RUBALCABA that he was in town (Albuquerque, NM) and that he was ready to meet in about thirty minutes. J. RUBALCABA acknowledged and told the UC that the same person, who agents believe to be CHAVEY, would be meet with the UC. J RUBALCABA asked if the UC wanted to meet at the same spot as last time. The UC affirmed and asked if J. RUBALCABA could tell his "homie" (CHAVEY) to meet in about thirty minutes. The phone call ended shortly thereafter.

16. At approximately 10:52 a.m., agents established surveillance at CHAVEY's residence located at 5732 Hanover Road NW, Albuquerque, NM.

17. At approximately 11:11 a.m., shortly after J. RUBALCABA spoke with the UC, agents intercepted an outgoing phone call between J. RUBALCABA and CHAVEY regarding the anticipated drug transaction with the UC at the Lowe's parking lot. CHAVEY agreed to meet with the UC on behalf of J. RUBALCABA for the purpose of conducting a 10,000 fentanyl pill drug deal and the call ended shortly thereafter.

18. At approximately 11:46 a.m., the UC made an outgoing phone call to J. RUBALCABA and asked if J. RUBALCABA's homie (CHAVEY) was on his way to meet with

---

[1] The UC utilized code to refer to the pills as a "plate". The UC asked for a "double order", referring to wanting 10,000 pills this time doubling the 5,000 pills purchased on May 30, 2024. Agents believe J. RUBALCABA occasionally uses coded language when referring to narcotics in an effort to evade law enforcement detection.

him. J. RUBALCABA informed the UC that he would call him (CHAVEY) to see how much longer before his arrival to the meet location.

19. At approximately 11:47 a.m., shortly after J. RUBALCABA spoke with the UC, agents intercepted an outgoing phone call between J. RUBALCABA and CHAVEY. During this phone call, J. RUBALCABA asked CHAVEY how far away he was to the meet location because his homie (UC) was there. CHAVEY responded with "leaving my pad right now," which agents interpreted to mean that CHAVEY was getting ready to leave his house. J. RUBALCABA acknowledged CHAVEY and the phone call ended shortly thereafter.

20. Moments later, the UC received an incoming phone call from J. RUBALCABA. The UC answered the phone call and J. RUBALCABA informed him that his "homie" (CHAVEY) was five minutes away. The UC acknowledged J. RUBALCABA, and the phone call ended shortly thereafter.

21. At approximately 12:04 p.m., agents observed the garage door of CHAVEY's residence open and observed CHAVEY VEHICLE reverse out of the garage. Agents maintained surveillance of CHAVEY VEHICLE until it arrived at the meet location and parked directly next to the UC vehicle. Upon arriving to the meet location, agents positively identified CHAVEY exit from the driver's seat of CHAVEY VEHICLE carrying a gray duffel bag with red handles. Agents observed CHAVEY open the passenger's side door of the UC vehicle and hand the bag over to the UC. The UC acknowledged CHAVEY and observed approximately 10,000 pills inside the duffel bag, which was subsequently exchanged for $6,000. After the exchange was made, agents observed CHAVEY enter back into CHAVEY VEHICLE and depart from the parking lot. Agents maintained surveillance on CHAVEY and observed him travel directly back to his residence located at 5732 Hanover Road NW.

22. After the deal, the UC maintained custody and control of the suspected fentanyl pills, followed by another agent, where they both arrived at the Albuquerque District Office. There, agents field tested and weighed the suspected fentanyl pills, which tested presumptive positive for fentanyl and weighed approximately 1,239.1 gross grams. The suspected fentanyl pills appeared to be packaged in ten separate bundles, each containing approximately 1,000 pills per bundle.

23. On June 28, 2024, agents utilized the same UC to arrange a controlled purchase of approximately 10,000 pills from J. RUBALCABA. The UC ordered the pills from J. RUBALCABA, who advised the UC that J. RUBALCABA was going to send the same guy, which agents know to be CHAVEY. Subsequently, agents established surveillance on CHAVEY's residence. Shortly after, agents observed CHAVEY leave his residence in CHAVEY VEHICLE and meet with the UC at the Lowe's parking lot, where the previous controlled purchases had taken place. CHAVEY provided the UC with approximately 10,000 suspected fentanyl pills. Agents maintained surveillance on CHAVEY after meeting with the UC and observed him travel directly back to his residence located at 5732 Hanover Road NW.

24. After the deal, the UC maintained custody and control of the suspected fentanyl pills, followed by another agent, where they both arrived at the Albuquerque District Office. There, agents field tested and weighed the suspected fentanyl pills, which tested presumptive positive for the presence of fentanyl and weighed approximately 1,340.2 gross grams.

25. Furthermore, agents have continued to conduct toll analysis on several of J. RUBALCABA's cellular phones and records show that J. RUBALCABA continues to be in regular contact with CHAVEY. Based on this information, agents believe CHAVEY continues to facilitate drug transactions on J. RUBALCABA's behalf. Additionally, based on the UC communications with J. RUBALCABA and the intercepted communications between CHAVEY

and J. RUBALCABA, agents believe J. RUBALCABA directs CHAVEY to make his deliveries of narcotics on his behalf.

26. As recently as July 29, 2024, agents have conducted surveillance and routine spot checks on known locations of CHAVEY and know that CHAVEY is still utilizing CHAVEY VEHICLE as a primary vehicle.

## ONGOING INVESTIGATION AND CHALLENGES INSTALLING PREVIOUSLY AUTHORIZED TRACKING DEVICE

27. On August 5, 2024, the Honorable Judge Steven C. Yarborough authored a tracker warrant to allow agents to place a tracker on CHAVEY VEHICLE (MR 24-1453). Since that authorization, agents have been unable to execute the tracker warrant and install the tracking device on CHAVEY VEHICLE. Since trackers require covert tactics to install the tracker without being detected, agents have to be selective on when the best opportunity to install the tracker.

28. The 10-day period in which to execute the previous warrant is expiring and agents have been unable to install the tracking device.

29. Agents believe the tracking device is still essential in the investigation and the government is therefore requesting a new warrant to place a tracker on CHAVEY VEHICLE.

30. On August 9, 2024, the Honorable Kea Riggs, United States District Judge for the District of New Mexico, issued an order authorizing the interception of wire and electronic communications to and from (505) 918-5192 (T. RUBALCABA PHONE 1), (505) 217-6270 (T. RUBALCABA PHONE 10), and (505) 518-5490 (J. RUBALCABA PHONE 1). Interceptions began on Augst 10, 2024, and are ongoing at this time.

31. Agents also believe that CHAVEY is still utilizing CHAVEY VEHICLE to conduct drug trafficking.

32. To ensure the safety of the executing officer(s) and to avoid premature disclosure of the investigation, it is requested that the Court authorize installation, maintenance, and removal of the tracking device during both daytime and nighttime hours. During surveillance of CHAVEY VEHICLE, agents have determined that the vehicle is often parked on the street in areas of high traffic and heavy public presence during daylight hours, which presents a physical risk to the executing officer(s) installing, maintaining, and removing the tracking device, as well as a risk of compromising the investigation.

33. In the event the Court grants this application, there will be periodic monitoring of the tracking device during both daytime and nighttime hours for a period of forty-five days following issuance of the warrant. The tracking device may produce location signals from inside private garages or other such locations not open to the public or visual surveillance.

## AUTHORIZATION REQUEST

34. Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 3117, that authorizes members of the DEA or their authorized representatives, including but not limited to other law enforcement agents and technicians assisting in the above-described investigation, to install a tracking device in or on CHAVEY VEHICLE within the District of New Mexico within fourteen days of the issuance of the proposed warrant, to maintain, repair, and/or replace the tracking device as necessary, and to remove the tracking device from the CHAVEY VEHICLE after the use of the tracking device has ended.

35. In accordance with 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), I further request that the warrant delay notification of the execution of the warrant for one hundred twenty days after the end of the authorized period of tracking (including any extensions thereof) because there is reasonable cause to believe that providing immediate notification may have an adverse result, as defined in 18 U.S.C. § 2705. As noted above, there is an active wiretap investigation involving targets with whom CHAVEY communicates and coordinates in the sale of illegal narcotics. Targets are known to be security conscious and are connected to each other in different roles of the DTO. Agents believe that if CHAVEY were to be notified it would cause the rest of the DTO to react and possibly change residences, stash houses, and/or change phone numbers, or possibly relocate. Providing immediate notice would seriously jeopardize the ongoing investigation by prematurely revealing its existence and giving suspects an opportunity to flee from prosecution, destroy or tamper with evidence, intimidate potential witnesses, notify confederates, and change patterns of behavior.

36. I further request that the Court seal the warrant and the affidavit and application in support thereof, except that copies of the warrant in full or redacted form may be maintained by the United States Attorney's Office and may be served on Special Agents and other investigative and law enforcement officers of the Drug Enforcement Administration, federally deputized state and local law enforcement officers, and other government and contract personnel acting under the supervision of such investigative or law enforcement officers, as necessary to effectuate the warrant. These documents pertain to and discuss an ongoing criminal investigation that is neither public nor known to all the targets of the investigation. Accordingly, there is good cause to seal these documents because their premature disclosure may seriously jeopardize the investigation. Sealing these documents will also better ensure the safety of agents and others.

37. This affidavit has been reviewed and approved by Assistant United States Attorney Blake Nichols.

Respectfully submitted,

*[signature]*

David Zimmerman
Special Agent
U.S. Drug Enforcement Administration

Telephonically sworn and electronically signed before me on this <u>14th</u> day of August 2024.

*[signature]*

THE HONORABLE STEVEN C. YARBROUGH
United States Magistrate Judge